**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Richard HAUFF, Defendant-Appellant.**

**No. 16431.**

United States Court of Appeals
Seventh Circuit.

May 27, 1968.

Rehearing Denied June 18, 1968.

Daniel C. Ahern, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Michael B. Cohen, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge, and CASTLE, Circuit Judge.

DUFFY, Senior Circuit Judge.

The indictment herein contained five counts charging defendant with violations of Title 18 U.S.C. § 1343, which prohibits the use of interstate wire com-

munications in the course of a scheme or artifice to defraud.

Defendant was found guilty by a jury on all counts and was sentenced to a term of three years on each count, to be served concurrently with each other, and consecutively with an earlier sentence of three years for violation of the conflict of interest statute, which judgment of conviction was, at that time, on appeal to this Court.

Defendant moved to dismiss the indictment, claiming a delay between the alleged offense and the return of the indictment prejudiced his defense contrary to his constitutional right to due process and a speedy trial. Prior to the trial, defendant also moved that the prosecution be prohibited from impeaching him if he took the witness stand, by the use of his prior conviction which was pending on appeal in this Court.

Sidney Lederman and defendant Hauff first met in 1958 or 1959. In 1961, defendant told Lederman that he, Hauff, had an interest in a piece of land in Las Vegas, Nevada, on which he planned to build a hotel and casino. This plan or proposal was often referred to on the trial as the Continental Hotel project. Hauff asked Lederman if he would be interested in representing Hauff's business interests in this project. Two days later, Lederman told Hauff that he would be interested.

In order to decide the issues before us, it is not necessary to detail the many representations made by Hauff to Lederman which were proved on the trial to be false. There also is no dispute as to the various payments of money to Hauff by Lederman induced by the false promises of Hauff.

■ We shall first consider defendant's claim that the delay of more than two years from the discovery of the alleged facts of the offense to the time the indictment was handed down is contrary to due process of law and to the right of the defendant to have a speedy trial.

Defendant argues that as early as the fall of 1961, the Government was aware of the complaint by Lederman that the defendant had defrauded him in a Las Vegas hotel scheme. Defendant recalls that in July 1963, he called at the Chicago office of the FBI to tell them the transaction between Lederman and himself was a loan. The indictment was filed on November 15, 1965.

In order to show prejudice due to the pre-indictment delay, defendant asserted by affidavit that a Mr. Silver died on October 27, 1963, and that Silver had been a witness to parts of the indictment transaction, and that Silver would have corroborated defendant's testimony that his numerous dealings with Lederman were loan transactions. Therefore, defendant argues, the trial court committed error in denying defendant's motion to dismiss the indictment.

The record before us contains no evidence of any meeting when Hauff, Lederman and Silver were present. The alleged meeting is not referred to on the cross examination of Lederman or in the direct examination of Hauff. It stretches credulity too far to believe that by some oversight reference to such an important meeting was entirely overlooked. The Court below, and this Court, are asked to rely solely on Hauff's self-serving affidavit.

When Hauff told the FBI that the transaction between himself and Lederman was a loan, he did not mention that Silver could corroborate his story. Had Hauff done this, the FBI would have interviewed Silver, and this interview would have been available to Hauff at trial. As a matter of fact, Hauff did not take any statement from Silver when Silver was alive. It is doubtful that Silver could have corroborated Hauff's story since no one took any statements from him during the investigation of the alleged crime.

This Court recently has considered a similar claim in United States of America v. Deloney, 389 F.2d 324 (January 25, 1968), cert. den. 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417. We there referred to our previous decisions in United States

v. Panczko, 367 F.2d 737 (7 Cir., 1966) and United States v. Evans, 385 F.2d 824 (7 Cir., 1967).

In *Deloney* we said: "We think we should concede that it is possible to conceive of a delay less than the period of the Statute of Limitations that would be so unreasonable and the prejudice to defendant so great, that relief under the Fifth Amendment should be afforded. But this is not the instant case, nor was any such case presented in Panczko or Evans."

The Government points out that the Federal Bureau of Investigation in this case was required to investigate leads and hold interviews with many witnesses. Those transactions occurred in Chicago, San Antonio, Dallas, Los Angeles and North Hollywood. It claims it was reasonable that a lengthy investigation would be necessary.

A pertinent statement was made by the Court in United States v. Feinberg, 383 F.2d 60, 64–65 (2 Cir., 1967): "Time consuming investigation prior to an arrest minimizes the likelihood of accusing innocent parties and may facilitate the exposure of additional guilty persons."

■ While the rule in this Circuit is that a trial court should dismiss an indictment because of pre-indictment delay if the accused proves he has been prejudiced, in this case the defendant has not sustained his burden of proving that he has been prejudiced.

■ The second point urged by defendant is that error was committed by denying defendant's motion to require the Government not to refer, by way of impeachment, to defendant's conviction on which an appeal was then pending. Defendant frankly urges that we should overrule United States v. Empire Packing Company et al., 174 F.2d 16, 20 (7 Cir., 1949), cert. den. 337 U.S. 959, 69 S.Ct. 1534, 93 L.Ed. 1758 (1949).

The rule in *Empire* is that prior convictions on which appeals are pending are admissible for purposes of impeachment where the defendant takes the witness stand to testify in his own behalf.

We there said: "Unless and until the judgment of the trial court is reversed, the defendant stands convicted and may properly be questioned regarding said conviction solely for the purpose of testing credibility." This principle was reaffirmed in United States v. Hoffa et al., 367 F.2d 698, 713–714 (7 Cir., 1966).

■ The defendant admits that the position of this Circuit is a majority view and that the position he espouses is the minority view. 16 A.L.R.3rd 726, 728, 735. While we decline to overrule the rule stated in *Empire* and *Hoffa*, we think the defendant in this case is in no position to question the rule heretofore established since it was the defendant's attorney who introduced the prior conviction at the time defendant took the witness stand to testify in his own behalf at the trial.

The Government asked no questions of defendant regarding his conviction, and the Government prosecutor made no mention of same in his closing argument.

We hold the District Court properly denied defendant's motion to dismiss.

The judgment of conviction is Affirmed.